IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CAMILLA EVANS and CAMILLA
CONNERS,

                                                       13cv01550

        Plaintiffs,                  **ELECTRONICALLY FILED**

        v.

BOROUGH OF EMSWORTH, ET AL.,

        Defendants.

**<u>Memorandum Opinion</u>**

**I.    Introduction**

This is a civil rights action with supplemental state law claims. Plaintiff-Mother Camilla Evans ("Plaintiff Evans" or "Plaintiff Camilla Evans") and Plaintiff-Daughter Camilla Conners ("Plaintiff Conners" or "Plaintiff Camilla Conners") alleged that Defendants, Borough of Emsworth and Defendant Adams, as fire marshal ("municipal Defendants"), acting in their official capacity, and individual capacity, violated their constitutional rights and deprived them of Due Process of Law under the Fourth, Fifth, and Fourteenth Amendments, while acting under color of state law, in violation of 42 U.S.C. § 1983, when they unlawfully seized and condemned property in which Plaintiff-Mother had resided and had rented for 50 years, without proper notice and due process of law, and provided Plaintiffs with only 24-hours to vacate the premises. Plaintiff also alleged that the Borough of Emsworth was subject to municipal liability under Section 1983 for failing to properly train and supervise Defendant Adams. Furthermore, Plaintiffs also alleged that Defendant Adams acted in concert with (conspired with) Defendant-

1

Son David Evans, and Defendant-Daughter-in-Law Judith Evans ("individual Defendants" or "Evans Defendants"), who were the lawful owners of the property and with whom Plaintiffs were entangled in a family dispute over distribution of an estate, to violate their civil rights pursuant to 42 U.S.C. § 1983.

However, crucially, a second ordered mediation of this matter was held on September 10, 2014 at which a settlement was obtained between Plaintiffs and Defendant Adams, and the Borough of Emsworth. On September 11, 2014, a notice of voluntary stipulation of dismissal was filed by Plaintiffs and Defendant Adams/Borough of Emsworth pursuant to Fed. R. Civ. Pr. 41 therefore arguably negating the merits of any allegations that Defendant Adams conspired with the Evans Defendants to violate Plaintiffs' constitutional rights. The only other remaining claims are state law claims including conspiracy, breach of contract, unjust enrichment, conversion, trespass, and invasion of privacy against the Evans Defendants alleging that they wrongfully evicted Plaintiffs, attempted on numerous occasions to have Plaintiff-Mother committed to a nursing home on the basis of incompetence (they were unsuccessful in this regard), that they drilled in the locks, leaving Plaintiffs without a way to retrieve their possessions, and requiring them to live in a hotel since November of 2012.

The Court previously denied Defendants' Motions to Dismiss without prejudice to readdressing the same arguments, if appropriate, at the summary judgment stage of the proceedings. That stage of the proceedings is now upon the Court, and currently pending are the Motions for Summary Judgment by both the municipal Defendants, and the individual Defendants. Doc. Nos. 49, 51, and 45, respectively.[1] After careful consideration of the pending

---

[1] With the filing of the voluntarily stipulation of dismissal, the Court will terminate/DENY AS MOOT the pending Motions for Summary Judgment of the municipal Defendants (Defendant Adams and the Borough of Emsworth).

Motion, and responses in opposition thereto (including Plaintiffs Amended Brief in opposition filed on September 15, 2014), this Court will GRANT the Evans Defendants' Motion for Summary Judgment as to the civil rights claim under Section 1983, and will to decline exercise supplemental jurisdiction over the remaining state law claims. The crux of this dispute is a family/property/landlord-tenant matter that is more appropriately resolved in state court.

## II. Factual Background

The Court has assimilated approximately118 pages of joint material facts submitted by the parties. However, since only the claims against the Evans Defendants remain, the Court will briefly recount the factual history related to the Evans Defendants and only facts related to the alleged conspiracy between the Evans Defendants and the municipal Defendants.

Judging the facts in the light most favorable to Plaintiffs, the factual history is as follows. Plaintiff Camilla Evans, is an eighty-six year old mother of five (5) children, including Defendant David Evans, who is married to Defendant Judith Evans, as well as Plaintiff Camilla Evans Conners. Plaintiff Evans lived in the home for over 50 years and had previously paid rent to the prior owner. Doc. No. 48 at ¶ 33. On July 7, 2005, the Evans Defendants purchased the property at 161 Neville Street and agreed to allow Mrs. Evans to reside in the house if she paid the utilities and kept the property in good repair, but did not require her to pay rent in the sense of a monthly payment to them. Doc. No. 48 at ¶¶ 34-36. The Evans Defendants were aware for years that Plaintiff Camilla Conners had moved in with their mother, an arrangement allegedly recommended by Camilla Evans physician. Doc. No. 48 at ¶ 37.

The Evans Defendants contend that Plaintiffs were hoarders which prevented access to the electrical outlets, switches and fixture; Plaintiffs deny that they were hoarders. The Evans

3

Defendants posit that recognizing the danger to their mother, Defendant David Evans attempted to convince Plaintiff Evans to voluntarily vacate the premises so that the house could be cleaned and necessary repairs be made. Approximately three electricians were called in to attempt to repair electrical issues in the Neville Property in the weeks leading up to the November 6, 2012 inspection. Doc. No. 48 at ¶¶ 9-11.

According to the deposition testimony of Mr. Schmigel, one of the electricians who did some temporary repairs, he made 'a few phone calls' to find out who owned the house. Doc. No. 48 at ¶ 52. Mr. Schmigel then contacted Defendant David Evans and informed him sternly of his concerns about the unsafe condition of the house, namely (1) the condition of the furnace; (2) the lack of electricity in the house for 4-5 days; (3) lack of working smoke detectors; (4) the amount of clutter; and (5) the risk of fire caused by the space heater. Doc. No. 48 at ¶¶ 55-56

On October 30, 2012, the police were called on the alleged basis that Plaintiffs would not permit Defendant David Evans to enter the home. *Id*. at 61. In late October of 2012, Defendant Adams received an anonymous phone call about a potential fire hazard at the Neville Property. *Id*. at 74. Borough Officials contacted Defendant David Evans regarding the same. *Id*. at 75.

On November 1, 2012, Plaintiffs Camilla Evans and Camilla Conners filed a Protection from Abuse (PFA) action against Defendant David Evans in the Family Division, of the Allegheny County Court of Common Pleas. Doc. No. 47 at ¶ 23. By letter dated November 3, 2012, Defendant David Evans wrote to his mother that she is placing herself in danger by continuing to live in the property. Doc. No. 48 at ¶ 69. Plaintiffs contend that they hired an electrician, Mr. O'Shea who was working on the property, but that he received a call from a Borough Official stating he was better off to stay out of it because Plaintiffs were not the owners of the property and it was going to be condemned. Doc. No. 48.

4

On November 5, 2014, Council President Paul Getz was informed that the Neville Property was uninhabitable due to an electrical condition, and as of that date, Mr. Getz had never met the owner of the property. *Id*. at 78. Borough Officials spoke with each other on the morning of the November 6, 2012 inspection to discuss the condition of the property, and prepared a condemnation placard citing to Section 109.1 of the International Property Maintenance Code. Doc. No. 48 at ¶¶ 89-90.

On November 6, 2012, pursuant to the earlier conversation, Defendant Adams, who served as Emsworth Borough Fire Marshall from 2000 to December 31, 2013, conducted an inspection of the property, took photographs of the home, and condemned the home, declaring it unfit for human habitation because of an alleged imminent danger from the electrical system, and other conditions in the house. Doc. No. 48 at ¶¶ 5, 99-115. Plaintiffs were afforded 24 hours to vacate the premises, which according to Plaintiffs negates the contention that there was an unsafe condition on the property. Doc. No. 71 at ¶ 5; Doc. No. 48 at ¶ 116. Nonetheless, prior to inspecting the property and condemning it, Defendant Adams contacted Mr. Schmigel to seek his opinion on the conditions of the home, and Mr. Schmigel advised him of his opinion that it was very unsafe. Doc. No. 48 at ¶¶82-85.

According to Plaintiffs, Defendant Adams was incompetent to inspect the premises because he did not have any electrical experience, training, knowledge as an electrical inspector. Defendant Adams claims that he acted pursuant to the 2009 International Property Maintenance Code (IPMC) which states in pertinent part that when a code official is of the opinion that there is actual or potential danger to the building occupants or others in proximity to the building, the code official is "empowered" to order and require the occupants vacate the premises "forthwith." See Section 109.1 of the IPMC. Doc. No. 48 at ¶¶ 27-29.

Then, on November 7, 2012, Ohio Township Detective served a copy of temporary PFAs that were filed by Plaintiffs on Defendant David Evans at 161 Neville Street and also at David Evans primary residence in Franklin Park, Pennsylvania. Doc. No. 47 at ¶¶24-25.

After the condemnation on November 7, 2012, Defendant Hanny was called to 161 Neville Street due to an altercation. Id. at ¶ 28. At the time, he was allegedly told there was a PFA for him, and he recited that he served the PFA on David Evans. Defendant David Evans claimed that he had no knowledge of the PFA, but Plaintiffs dispute that contention and state that Defendant David Evans became aware of the PFA on November 1, 2012. Doc. No. 71 at ¶ 29.

Plaintiffs did vacate the premises after ordered to do so, and took some of their personal property with them. By letter dated, November 29, 2012, Defendant David Evans wrote to Plaintiff Camilla Evans requesting that she work something out to remove the remainder of her possessions from the property while repairs were made. Doc. No. 47 at ¶ 13. Plaintiffs deny the truth of the assertions included in the letter. Doc. No. 71 at ¶ 13.

On January 11, 2013, a prior attorney for Defendant David Evans wrote a letter to a prior attorney of Plaintiff Camilla Evans, again requesting that Plaintiffs remove their possessions from the Neville Street premises. *Id.* at ¶ 14. After numerous letters were written between the parties (including the attorneys of record in this case) allegedly in an effort to have Plaintiffs come to the property to retrieve their possessions, the issue was raised by parties before this Court at the Initial Case Management Conference (see doc. no. 27), and the Court set up a date at which both attorneys and the parties were required to be present and to remove the remainder of Plaintiffs' personal belongings from the premises, which resulted in motion practice between the parties. Doc. Nos. 33, 35 and 36.

## III. Summary Judgment Standards

"Rule 56 of the Federal Rules of Civil Procedure 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. Sch. Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), quoting *Foehl v. United States*, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof."), citing *Anderson* and *Celotex Corp.*.

In deciding a summary judgment motion, a court must view the facts in the light most favorable to, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party. *Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001); *Woodside*, 248 F.3d at 130; *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999). Further, the court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998), quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

## IV. Discussion

According to Fed. R. Civ. Pr. 41, a notice of voluntary dismissal operates as an adjudication on the merits. The text of Rule 41, Dismissal of Actions, states as follows:

(1) By the Plaintiff.

(A) Without a Court Order. Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or

(ii) *a stipulation of dismissal signed by all parties who have appeared.*

(B) Effect. Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, *a notice of dismissal operates as an adjudication on the merits.*

(Emphasis Added.)

"The Stipulation is analogous to a forfeit in baseball; no at-bats were taken, no pitches were thrown, but it counts as a loss in the final standings. The voluntary dismissal with prejudice is a final judgment on the merits" *Jarvis v. Matlin Patterson Global Advisers, LLC* 867 F.Supp.2d 559, 562 (D. Del. 20112). Here, by the voluntary notice of dismissal with prejudice filed by Plaintiffs and the municipal Defendants, Plaintiffs have therefore dismissed with prejudice all federal claims for violation of their civil rights against the municipal Defendants. The Evans Defendants now argue that this voluntary stipulation of dismissal evidences that the municipal Defendants could not have conspired with the Evans Defendants. While this argument has some traction, the Court still finds it prudent to evaluate the allegations of conspiracy, albeit in the context of only the claims against the Evans Defendants. Because

the crux of Plaintiffs' federal civil rights claims against the Evans Defendants are that they conspired with the municipal Defendants (and specifically Defendant Adams), the only question then is whether Plaintiffs whether the Evans Defendants acted under "color of state law" and have presented evidence of a conspiracy or concerted action and thus are liable under 42 U.S.C. § 1983.

In order for Plaintiffs to sustain a claim of violation of their civil rights under Section 1983, a person or persons must be acting under color of state law in order to be liable. As the "under color of state law" requirement is part of the prima facie case for a Section 1983 claim, Plaintiffs bear the burden of proof on that issue. *West v. Atkins*, 487 U.S. 42, 48 (1988). The "color of state law" element is a threshold issue; there is no liability under Section 1983 for those not acting under color of law. *Versarge v. Township of Clinton, N.J.*, 984 F.2d 1359, 1363 (3d Cir.1993).

Where, as here, the actors are not state or municipal officials, but are private individuals, the Court must address whether their activity can nevertheless be deemed to be under color of law. The inquiry is fact-specific. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982); *Krynicky v. University of Pittsburgh*, 742 F.2d 94, 97–98 (3d Cir.1984), cert. denied, 471 U.S. 1015 (1985).

The color of state law analysis is grounded in a basic requirement, "that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West*, 487 U.S. at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)). A private action is not converted into one under color of state law merely by some tenuous connection to state action. The issue is not whether the state was involved in some way in the

relevant events, but whether the action taken can be fairly attributed to the state itself. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974).

When a private party and a public official conspire together to violate the constitutional rights of a plaintiff, the private party's conduct is committed under color of state law:

> [A] private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983. "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents."

*Zenquis v. City of Philadelphia*, 861 F.Supp.2d 522 (E.D. Pa. 2012), citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970) (quoting *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)).

Not infrequently this doctrine is invoked in Section 1983 suits only seeking recovery from a private party. E.g., *Adickes*, 398 U.S. at 147–48 (suit against private company based on alleged conspiracy between company employees and local police officers); *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175–76 (3d Cir.2010) (suit against private firm based on alleged conspiracy between firm and state judges).

"A civil conspiracy is a combination of two or more persons to do an unlawful or criminal act or to do a lawful act by unlawful means or for an unlawful purpose." *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir.1974). The requirement of action under color of state law is satisfied when a private person willfully participates in joint action with a state official. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *Black, supra* at 320. This is true even when the state official is immune from civil liability. *Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), (private citizen

10

conspiring with state court judge to deprive a citizen of his constitutional rights may be held liable under section 1983 notwithstanding the judge's absolute immunity from suit).

Plaintiffs thus must make a showing sufficient to establish the existence of the conspiracy or willful participation in joint action with a state official. Since Plaintiffs have alleged the deprivation of constitutional rights, it remains for them to demonstrate facts indicating that the Evans Defendants acted under color of state law.

In order to survive summary judgment, Plaintiffs must demonstrate a genuine issue of material fact that there existed between the Evans Defendants and the state officials an understanding, agreement, or conspiracy **to deprive the plaintiff of a federal right**. *Drum v. Nasuti*, 648 F.Supp. 888 (E.D. Pa 1986)(emphasis added). Plaintiffs must show a genuine factual issue of a combination, agreement, or understanding among the municipal and Evan Defendants. *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir.1974). There must also be a genuine factual issue that the Defendants plotted, planned, or conspired together to carry out the chain of events. *Id.* Agreement to commit an unlawful act lies at the heart of a civil conspiracy. *Id.* Plaintiffs may not rely upon bare assertions, conclusory allegations, or suspicions, regarding the conspiracy, in order to defeat Defendants' motion for summary judgment. *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981).

Plaintiffs have presented no evidence that the Evans Defendants were acting under color of state law, or that they conspired with or otherwise acted in concert with local officials to deprive them of their civil rights. The factual background of this case does not set forth facts from which a jury could reasonable infer that there was a meeting of the minds between and among the Evans and municipal Defendants to violate Plaintiffs' civil or constitutional rights, only that there was a consensus between the property owner and the municipal Defendants that

the property was unsafe to inhabit.

Here, the undisputed facts show no nexus between the actions of the state actor (Defendant Adams and the Borough of Emsworth), and the challenged actions of the Evans Defendants. The undisputed evidence shows that the parties who were allegedly conspiring together were unknown to each other prior to the condemnation, and there is no evidence that municipal Defendants acted at the behest of the Evans Defendant, or otherwise had a **common plan to wrongfully condemn and evict Plaintiffs**. There is no evidence other than a brief conversation between Borough officials and David Evans, and Mr. Schmigel. While Plaintiffs attempt to state that there was a unity of purpose between and among the Defendants, that unity of purpose was only to condemn the property based upon numerous assessments that the property was unsafe, there was no unity of purpose to wrongfully evict Plaintiffs. Moreover, notably absent from the factual record is any indication that there was a common goal, "willful participation" or "understanding" to vitiate Plaintiffs civil rights. *See Harvey v. Plains Tp. Police Dept.*, 421 F.3d 185, 195-96 (3d. Cir. 2005)(Landlord was not a "state actor" in connection with her conduct in opening the tenant's apartment door and not liable under Fourth Amendment where she did not act jointly with the police officer who was present, the conduct was not coerced by a state official and she was not a willful participant in state action). See also, *Kost v. Kozakiewicz*, 1 F.3d 176 (In order to establish a Section 1983 conspiracy claim against a private party, there must some proof of an "understanding" to deny Plaintiff's rights. There was no proof of "understanding" to show participation in a conspiracy under Section 1983).

And, while it may be plausible to glean that the Evans Defendants were involved in some type of power play between and among the siblings and their mother, and that the Evans

12

Defendants motives were perhaps questionable, that does not rise to the level of establishing a meeting of the minds or common goal to violate Plaintiffs civil rights. Therefore, a claim under Section 1983 cannot be sustained against the Evans Defendants because there is no evidence that they were state actors and/or that they conspired with state actors to deprive Plaintiffs of their civil rights.

Having dismissed the sole basis for federal jurisdiction, the only remaining claims are supplemental state law claims including conspiracy, breach of contract, unjust enrichment, conversion, trespass, and invasion of privacy. When a district court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a), as in this case, it has discretion to exercise or decline to exercise this jurisdiction. *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir.2003). "Pendent jurisdiction is not a plaintiff's right, but a matter of district court discretion, and may be declined for a range of valid reasons that are codified in Section 1367(c)." *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 171 (1997), (quoting *United Mine Workers of Am. v. Gibbs* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

Section 1367(c) specifically states that the district court may decline to exercise supplemental jurisdiction over a claim or claims, "if - - the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). The decision to exercise or not exercise supplemental jurisdiction decision "should be based on considerations of 'judicial economy, convenience and fairness to the litigants.'" *Cindrich v. Fisher*, 341 Fed. Appx. 780, 789-790 (3d Cir. 2009).

Having dismissed the federal claims over which this Court has original jurisdiction, this Court declines to entertain the remaining state law claims. This matter is a traditionally state

law matter, and at the crux of the matter is a family/property dispute. As the parties have noted, prior allegations surrounding this incident were handled in the Orphans Court of Allegheny County. The Orphans Court Division (or the Court of Common Pleas) are best equipped to resolve this matter affecting property and it would not be unfair to the litigants to decline to exercise jurisdiction. The Court sees no extraordinary reason that would compel the Court to exercise its discretion to adjudicate this matter when only state law claims remain. *Greenwood Partners, L.P. v. Cimnet, Inc*. 2003 WL 22238981 (E.D. Pa. 2003). Judicial economy will not be undermined by this Court's refusal to exercise jurisdiction over the state law claims, and this case may be transferred pursuant to 42 Pa.C.S.A. § 5103(b), to a Pennsylvania court and the case will proceed from there. Further, comity considerations weigh in favor of transfer, as this case involves issues that are traditionally resolved by the state. Additionally, consideration of issues of convenience or fairness do not provide a reason for this Court to exercise supplemental jurisdiction. *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 351 (U.S. Pa. 1988); *Cindrich v. Fisher*, 2006 WL 898176 *2-3 (M.D. Pa. 2006)(aff'd 341 Fed. Appx. 780 (3d Cir. 2009))(federal claims were dismissed at summary judgment phase and the district court properly declined to exercise jurisdiction over remaining state law claims).

For these reasons, the Court will GRANT the Evans Defendants' Motion for Summary Judgment with respect to federal civil rights claims, and will DENY AS MOOT the Motion for Summary Judgment with respect to the state law claims. This case will be transferred to the Court of Common Pleas of Allegheny County, pursuant to 42 Pa. C.S.A. § 5103(b) forthwith.

An appropriate order follows.

SO ORDERED this 16th day of September, 2014.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All counsel of record